UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE C. WILLIAMS,                          Case No. 12-15075

               Plaintiff,                Victoria A. Roberts
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge
               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 18)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On November 16, 2012, plaintiff George C. Williams filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Victoria A. Roberts referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for child's insurance benefits. (Dkt. 2). This matter is before the Court on cross-motions for summary judgment. (Dkt. 13, 18).

### B.    Administrative Proceedings

Plaintiff filed the instant claim for Disabled Adult Child disability benefits

based on his deceased mother's eligibility on June 4, 2009, alleging disability beginning November 28, 1967.  (Dkt. 9-3, Pg ID 117).  Plaintiff's claim was initially disapproved by the Commissioner on August 4, 2009.  (Dkt. 9-3, Pg ID 117-22).  Plaintiff requested a hearing and on July 22, 2010, plaintiff appeared, along with his social worker but without an attorney or other non-attorney representative, before Administrative Law Judge ("ALJ") Richard L. Sasena, who considered the case de novo.  (Dkt. 9-2, Pg ID 92-115).[1]  In a decision dated September 28, 2010, the ALJ found that plaintiff was not disabled.  (Dkt. 9-2, Pg ID 76-88).  Plaintiff requested a review of this decision on December 22, 2010. (Dkt. 9-2, Pg ID 62, 64-66).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[2]  the Appeals Council on September 18, 2012, denied plaintiff's request for review.  (Dkt. 9-2, Pg ID 54-

---

[1]Plaintiff had previously filed a Title II application for disability insurance benefits, which was denied in November 2006.  Plaintiff did not appeal that determination, which became the final decision of the Commissioner and binding on all parties.  Plaintiff also previously filed a Title XVI application for supplemental security income, which was allowed by a determination issued on January 30, 2007, awarding benefits beginning December 1, 2006.  Plaintiff is currently receiving payments under Title XVI.  (Dkt. 9-2, Pg ID 79; Dkt. 9-4, Pg ID 150-64).

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

58); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that
plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion
for summary judgment be **DENIED**, that the findings of the Commissioner be
**REVERSED**, and that this matter be **REMANDED** to the Commissioner for
further proceedings consistent with this Report and Recommendation.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1967 and was 42 years old at the time of the
administrative hearing, and one day old on November 28, 1967, the alleged onset
date of disability.  (Dkt. 9-2, Pg ID 81, 87).  Plaintiff had no past relevant work
history.  (Dkt. 9-2, Pg ID 86).  The ALJ applied the five-step disability analysis to
plaintiff's claim and found at step one that plaintiff had not engaged in substantial
gainful activity since the alleged onset date.  (Dkt. 9-2, Pg ID 81-82).  At step two,
the ALJ found that plaintiff's learning disorder, depressive disorder, adjustment
disorder, impaired vision, and obesity were "severe" within the meaning of the
second sequential step.  (Dkt. 9-2, Pg ID 82).  At step three, the ALJ found no
evidence that plaintiff's combination of impairments met or equaled one of the
listings in the regulations.  (Dkt. 9-2, Pg ID 82-84).  The ALJ determined that,
prior to attaining age 22, plaintiff had the following residual functional capacity

("RFC"):

> to perform a full range of work at all exertional levels
> but with the following nonexertional limitations: the
> claimant is limited to simple, routine, repetitive tasks that
> require little judgment and can be learned in a short
> period of time.  The claimant cannot have any interaction
> with the public.  The claimant can only have occasional
> interaction with co-workers.  The claimant can be in
> proximity with co-workers but not as a team member.
> The claimant has restrictions on vision such that he could
> not read fine print.

(Dkt. 9-2, Pg ID 84-86).

At step four, the ALJ found that plaintiff had no past relevant work.  (Dkt. 9-2, Pg ID 86).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 9-2, Pg ID 87-88).

**B.    Plaintiff's Claims of Error**

Plaintiff appears *pro se* and argues that he is disabled and entitled to child disability benefits based on mental retardation and/or low IQ scores.  He contends that he has been disabled since he was born and was in special education classes while in school.  His IEPC of June 1984, when he was in 10th grade, showed Present Educational Levels of Math - WJ-6.4, WRAT-4.9, and Written Language - WJ-3.1, WRAT-4.0, meaning he was really at Grade Level 4-6 in Math and Grade Level 3-4 in Written Language.  He also seeks a remand so that his activities of

4

daily living prior to age 22 can be properly assessed.  He contends that his

disabilities make it difficult for him to act properly and remember things.  Plaintiff

also asserts that he was awarded SSI benefits in 2006 based on his low IQ scores,

and he believes he should similarly be awarded child disability benefits.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that substantial evidence supports the ALJ's

assessment of plaintiff's RFC.  The Commissioner asserts that, in order to recover

child's disability benefits, plaintiff bore the burden of proving disability beginning

before his 22nd birthday, November 27, 1989.  20 C.F.R. § 404.350(a)(5).

Plaintiff was 42 years of age at the time of the administrative hearing.  (Tr. 46).

According to the Commissioner, plaintiff argues the ALJ should have found him

disabled based on mental retardation, low IQ scores, or marked limitations in his

daily activities or functioning.  The Commissioner contends that plaintiff,

however, failed to meet his burden of proving work-preclusive limitations prior to

November 27, 1989.  *See* 20 C.F.R. § 404.1512; *Jones v. Comm'r of Soc. Sec.*, 336

F.3d 469, 474 (6th Cir. 2003) (a claimant bears the burden of proving the

existence and severity of limitations caused by his impairments up through step

four, which included the determination of his residual functional capacity).  The

Commissioner argues that the ALJ reasonably found there was insufficient

evidence to support plaintiff's allegations of work-preclusive mental limitations

prior to November 27, 1989.  (Tr. 33).

According to the Commissioner, in order to evaluate plaintiff's residual functional capacity, the ALJ reviewed evidence relating to plaintiff's work-related mental capabilities both before age 22 and after his 22nd birthday.  The Commissioner asserts that the only evidence dating before November 1989 were school records consisting of the following: (1) cognitive testing performed when plaintiff was eight years old; (2) a psychological report from the end of plaintiff's sixth grade year of school, including additional cognitive testing; (3) an individual education assessment from tenth grade; and (4) plaintiff's high school transcript. (Tr. 117-26, 240-42).  Based on these school records, the ALJ recognized that plaintiff received an hour of special education services per day because of a learning disability, and that he spent the remainder of the school day in general education classes.  (Tr. 32, citing Tr. 118).  As the ALJ noted, plaintiff graduated from high school ranked 137th out of 292 students with a 2.245 grade point average.  (Tr. 32, citing Tr. 126).

The Commissioner contends that plaintiff's school records further showed that his primary learning difficulty was in the area of visual perception, that he had difficulty with fine motor skills, and that he had poor eye sight.  (Tr. 120, 124). The Commissioner asserts that the ALJ identified cognitive testing results from age eight — verbal IQ score of 92, a performance IQ score of 81, and a full-scale

6

IQ score of 85.  (Tr. 32, citing Tr. 120-23, 240-42). Cognitive testing at age 12 similarly found plaintiff functioned within the "slow learner" range on full scale IQ; that he had at least "average" verbal abilities; and that his vocabulary, fund of general knowledge, and understanding of verbal concepts were within the "high average" range.  (Tr. 124).  The Commissioner argued that notably, none of the school records diagnosed plaintiff with mental retardation.

The Commissioner notes that plaintiff did not submit any other records from prior to November 1989.  However, plaintiff submitted, and the ALJ considered, records from outpatient mental health treatment that plaintiff received in the fall of 2006.  (Tr. 174-203, 243-57).  Plaintiff participated in an intake assessment in September 2006 and expressed grief, hopelessness, worthlessness, guilt, anxiety about issues with his sister, panic attacks, irritability, and disruptions of thought processes.  (Tr. 183-85, 245-47). Following the initial assessment, plaintiff attended individual therapy for approximately three months between September and December 2006. (*See* Tr. 203, September 20; Tr. 202, September 29; Tr. 201, October 6; Tr. 188, October 25; Tr. 189, November 1; Tr. 193, November 8; Tr. 194, November 15; Tr. 196, November 22; Tr. 197, November 29; Tr. 182, December 6).

The Commissioner contends that in addition to these one-on-one sessions with a therapist, a psychiatrist performed a psychiatric evaluation of plaintiff,

likely in October 2006, although the date is unclear.  (Tr. 179-81).  Plaintiff was

diagnosed with major depressive disorder, recurrent, moderate, not otherwise

specified (NOS); adjustment disorder with depressed mood; and mild mental

retardation.  (Tr. 181).  Plaintiff was also assigned a Global Assessment of

Functioning ("GAF") score of 50.  (Tr. 181).  The Commissioner asserts that

plaintiff attended only one follow-up session on November 2, where he terminated

treatment with a psychiatrist.  (Tr. 179-81, 191-93).  The Commissioner contends

that both plaintiff's therapist and psychiatrist requested further testing for a

potential learning disability, developmental disability, or mental retardation.  (Tr.

179 ("*possibly* due to some mental retardation"), 181, 196 ("*potential* learning

disability and developmental disability), 203).  The Commissioner asserts that the

requested testing showed that plaintiff did not meet the criteria for diagnosis of

mental retardation or placement into a developmental disabilities program.  (Tr.

177).  According to the Commissioner, similar to testing performed while plaintiff

was in school, plaintiff's verbal comprehension and verbal expression abilities

were in the average range; ability to pay attention and do sequential processing

was in the low average range; his nonverbal thinking, visual motor coordination

skills, and ability to solve nonverbal problems with extreme speed were in the

borderline range.  (Tr. 177).  The test examiner found plaintiff's relative strength

was his general fund of knowledge and ability to discuss things outside of his

objective experiences (Tr. 177), and that these strengths suggested that plaintiff

was intellectually curious and enjoyed reading.  (Tr. 177).  The examiner also

found plaintiff's communication, functional academics, and self-direction skills

were significantly more developed than his social and leisure skills.  (Tr. 178).

The Commissioner states that there are no records of any therapy or other

treatment after December 2006.  Plaintiff was discharged from the treatment

program in July 2007 due to no contact with his therapist.  (Tr. 243-45).  The

discharge summary included the same diagnoses as were made at psychiatric

evaluation, and also indicated that the therapist was unable to assess plaintiff's

functioning at the time of discharge because of the lack of contact.  (Tr. 244).  The

Commissioner argues that in light of the school records and brief treatment

records, the ALJ reasonably found the evidence failed to show disability prior to

November 1989.  (Tr. 33).

The Commissioner asserts that plaintiff argues that he is disabled based on

mental retardation.  (Tr. 1-3).  The Commissioner posits that it appears that

plaintiff may be arguing that he satisfied Listing 12.05(C) — Mental Retardation.

(Tr. 1-2).  The Commissioner argues that plaintiff, however, fails to satisfy the

elements of Listing 12.05(C), mental retardation, and, therefore, cannot meet the

Listing.  Listing 12.05(C) for Mental Retardation provides:

12.05 Mental retardation:  Mental retardation refers to

significantly subaverage generally intellectual
functioning with deficits in adaptive functioning initially
manifested during the developmental period; i.e., the
evidence demonstrates or supports onset of the
impairment before age 22:

C.  A valid verbal, performance, or full scale IQ of 60
through 70 and a physical or other mental impairment
imposing an additional and significant work-related
limitation of function;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).  To meet Listing 12.05(C), an

individual must establish all of the following: (1) mental retardation; (2) deficits in

adaptive functioning prior to age 22; (2) a valid IQ score between 60 and 70; and

(4) another impairment imposing an additional and significant work-related

limitation of function. *See* 71 Fed. Reg. 10419, 10423 (2006); *West v. Comm'r of

Soc. Sec.*, 240 Fed. Appx. 692, 697 (6th Cir. 2007).  The Commissioner argues

that plaintiff has not met his burden of showing that he met Listing 12.05(C)

because he cannot establish mental retardation.  *See* 71 Fed. Reg. 10419, 10423

(2006) ("you must have mental retardation that satisfies the criteria in the

introductory paragraph . . . in addition to the criteria in one of the paragraphs that

follows"); *Tucker v. Comm'r of Soc. Sec.*, 2008 WL 399573, at *6 (S.D. Ohio Feb.

12, 2008).  The Commissioner contends that the import of Listing 12.05 is that a

claimant cannot establish disability under Listing 12.05(C) with low IQ scores

alone — the claimant's functioning must reflect mental retardation as well.  *See*

10

American Association On Mental Retardation, Mental Retardation: Definition, Classification, and Systems of Supports 37 (9th ed. 1992) ("[L]ow IQ standard scores alone are not sufficient for diagnosis.").

The Commissioner argues that the ALJ reasonably found plaintiff had a learning disorder, but noted that he did not meet the criteria for a diagnosis of mental retardation. (Tr. 33). Indeed, none of the testing administered to plaintiff showed mental retardation. (*See* Tr. 120-25, 174-78). The Commissioner asserts that plaintiff was diagnosed with a learning disability in school, not mental retardation. (Tr. 117). According to the Commissioner, courts have recognized the distinction between mental retardation and borderline intellectual functioning or other learning disabilities. *See Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) ("Dr. Rosen made no diagnosis of mental retardation, terming Maggard's functioning as 'borderline'"); *Tucker*, 2008 WL 399573, at *6 ("First, the Court notes that none of the mental health experts of record, including Plaintiff's treating sources, diagnosed Plaintiff with mental retardation. Indeed, the only mental health expert who tested and considered Plaintiff's IQ scores, Dr. Stoeckel, opined that her diagnosis was, inter alia, borderline intellectual functioning and not mental retardation."). The Commissioner contends that while one psychiatrist diagnosed plaintiff with mild mental retardation in 2006 at an initial visit, the treatment notes show that the psychiatrist thought plaintiff "possibly" had "some

11

mental retardation," and that further testing was needed.  (Tr. 179, 181).  As the

Commissioner discussed above, the requested testing showed that plaintiff did not

meet the diagnostic criteria for mental retardation.  (Tr. 178).  That the tester found

a performance IQ of 70 is insufficient to establish mental retardation.  *See Cooper*

*v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 452 (6th Cir. 2007) ("Yet, it is not

enough for a claimant to point to one IQ score below 71; the claimant must also

satisfy the 'diagnostic description' of mental retardation in Listing 12.05. . . .  It is

undisputed that no psychologist has diagnosed Cooper with mental retardation.

The examiner and clinical psychologist who tested him diagnosed him instead as

borderline intellectual functioning."); *Newland v. Apfel*, 1999 WL 435153, at *6

(6th Cir. June 17, 1999).

According to the Commissioner, plaintiff also argues that he should be

found disabled based on low IQ scores.  However, low IQ scores are insufficient

to establish disability.  While plaintiff did receive a performance IQ of 70 in 2006,

his verbal IQ score was 97 and full scale IQ score was 84.  (Tr. 175).  The ALJ

also identified cognitive testing results at age eight — verbal IQ score of 92, a

performance IQ score of 81, and a full-scale IQ score of 85.  (Tr. 32, citing Tr.

120-23, 240-42).  In addition, cognitive testing at age 12 similarly found plaintiff

functioned within the "slow learner" range on full-scale IQ, that he had at least

"average" verbal abilities, and that his vocabulary, fund of general knowledge, and

12

understanding of verbal concepts were within the "high average" range.  (Tr. 124).
The Commissioner concludes that the ALJ reasonably accommodated plaintiff's
learning difficulties by limiting him to simple, routine, repetitive tasks that
required little judgment and could be learned in a short period of time.  (Tr. 175).
The Commissioner argues that plaintiff failed to show that any additional mental
limitations were warranted before November 1989.

The Commissioner contends that plaintiff also argues that he should be
found disabled based on marked limitations in activities of daily living and
functioning prior to age 22.  According to the Commissioner, at the hearing,
plaintiff and his social worker said he had a hard time being around people.  (Tr.
53, 55).  The Commissioner contends that consistent with plaintiff's complaints,
the ALJ significantly limited plaintiff's social interactions finding he could not
have any interaction with the public, could have occasional interaction with co-
workers, and could work in proximity to co-workers, but not as a team member.
(Tr. 31).  The Commissioner asserts that plaintiff also mentioned an inability to
use a cash register or perform addition without a calculator.  The Commissioner
argues that the ALJ reasonably accommodated these complaints, however, and
these limitations are consistent with the ALJ's residual functional capacity.  (Tr.
31).

The Commissioner contends that plaintiff also complained of difficulty

13

reading due to vision problems. (Tr. 47-48). The ALJ accordingly noted

plaintiff's vision restrictions and precluded jobs requiring reading fine print. (Tr.

31). The Commissioner asserts that ultimately plaintiff failed to prove that more

significant limitations were warranted. The Commissioner argues that plaintiff

simply cannot satisfy his burden of proof with assumptions, particularly

assumptions based on his condition well after his insured status expired. *See*

*Bollon v. Comm'r of Soc. Sec.*, 2010 WL 5056186, at *6 (E.D. Mich. Oct. 8, 2010)

("Plaintiff failed to meet her burden of establishing disability prior to her date last

insured."), *adopted by* 2010 WL 5056185 (E.D. Mich. Dec. 6, 2010); Social

Security Ruling ("SSR") 02-1p, 2000 WL 628049, at *2. The Commissioner

asserts that while plaintiff may disagree with the ALJ, the ALJ's findings were

well within the zone of reasonable choices, *see Mullen v. Bowen*, 800 F.2d 535,

595 (6th Cir. 1986), and the substantial evidence standard presupposes that there

is a zone of choice within which the decision maker can go either way, without

interference by the courts. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th

Cir. 2009). Because the ALJ made a reasoned and reasonable decision based on

substantial evidence, the Commissioner argues that the ALJ's decision should be

affirmed.

14

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

15

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

## B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

19

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

     "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

     If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

    **C.**    **Analysis and Conclusions**

     Plaintiff has filed for disabled adult child benefits. Disabled adult child

("DAC") disability benefits are available "if such child was under a disability . . .
at the time he attained the age of 18 or if he was not under such a disability . . . at
such time but was under a disability . . . at or prior to the time he attained . . . the
age of 22." 42 U.S.C. § 402(d)(1)(G); 20 C.F.R. § 404.350(a). Section 402(d)
"provides that a child of an individual entitled to old age or disability insurance
benefits is entitled to Child's Insurance Benefits if he is under a disability (as
defined by section 223(d) of the Social Security Act) which began before his
twenty-second birthday." *Jones v. Sec'y of Health & Human Servs.*, 1990 WL
17265, at *1 n.1 (6th Cir. Feb. 27, 1990); *Sibotean v. Comm'r of Soc. Sec.*, 2013
WL 588927, at *2 (W.D. Mich. Feb. 13, 2013).

Plaintiff here reached age 22 on November 27, 1989. (Dkt. 6-2, Pg ID 87).
Accordingly, plaintiff's DAC claim requires a finding of disability on or before
November 26, 1989, the day before his twenty-second birthday. *See* 42 U.S.C.
§ 423(a)(1)(A); 20 C.F.R. § 404.350(a)(5). Plaintiff argues that, because he was
found disabled for the purpose of receiving SSI benefits in January 2007, he
should also have been found disabled for the purposes of receiving disabled adult
child's benefits. However, the relevant date for determining whether a claimant is
disabled, and thus eligible to receive SSI benefits, is the filing date of his
application, here, November 2006. *See* SSR 83-20, 1983 WL 31249, at *7
(explaining that for successful SSI benefits claimants, "[o]nset will be established

21

as of the date of filing provided the individual was disabled on that date"). Accordingly, a finding that plaintiff was disabled in November 2006 does not necessarily indicate that he was disabled before November 27, 1989, the date on which he turned 22, and the relevant date for plaintiff's claim for disabled adult benefits. *See Stringer v. Astrue*, 465 Fed. Appx. 361, 365 (5th Cir. 2012) ("Accordingly, a finding that Stringer was disabled in October 1997 does not indicate that he was disabled before April 1, 1985, the date on which he turned 22.").

However, "[i]n cases like this, where a claimant with an alleged disability onset date preceding [his] 22nd birthday files an application for adult child's benefits, and has already been found disabled under another title of the Social Security Act for the period postdating [his] 22nd birthday, SSR 83-20 *requires* the ALJ to determine the onset date of disability." *See Houston v. Comm'r of Soc. Sec.*, 2011 WL 6152992, at *11 (E.D. Mich. Sept. 30, 2011) (emphasis added, quoting *Plumley v. Astrue*, 2010 WL 520271, at *5 (D. Vt. Feb. 9, 2010) (citing SSR 83-20, 1983 WL 31249)), *adopted by* 2011 WL 6152982 (E.D. Mich. Dec. 9, 2011). Regarding disabilities of a "nontraumatic origin," SSR 83-20 provides that the ALJ should consider "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity" when determining

the disability onset date.  SSR 83-20, 1983 WL 31249, at *2.[3]  The ruling further

provides:

> Determining the proper onset date is particularly
> difficult, when, for example, the alleged onset and the
> date last worked are far in the distant past and adequate
> medical records are not available.  In such cases, it will
> be necessary to infer the onset date from the medical and
> other evidence that describe the history and
> symptomatology of the disease process. . . .
>
> In determining the date of onset of disability, the date
> alleged by the individual should be used if it is consistent
> with all the evidence available.  When the medical or
> work evidence is not consistent with the allegation,
> additional development may be needed to reconcile the
> discrepancy.  However, the established onset date must
> be fixed based on the facts and can never be inconsistent
> with the medical evidence of record. . . .
>
> In some cases, it may be possible, based on the medical
> evidence to reasonably infer that the onset of a disabling
> impairment(s) occurred some time prior to the date of the
> first recorded medical examination, e.g., [on] the date the
> claimant stopped working. . . .
>
> If reasonable inferences about the progression of the
> impairment cannot be made on the basis of the evidence
> in file and additional relevant medical evidence is not
> available, it may be necessary to explore other sources of
> documentation. Information can be obtained from family
> members, friends, and former employers to ascertain why
> medical evidence is not available for the pertinent period
> and to furnish additional evidence regarding the course

----

[3]"Social Security Rulings are agency rulings 'published under the authority of the
Commissioner of Social Security and are binding on all components of the Administration.'"
*Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990) (citations omitted).

of the individual's condition.

SSR 83-20, 1983 WL 31249, at *2-3.  Thus, while "medical evidence serves as the

primary element in the onset determination," SSR 83-20, 1983 WL 31249, at *2,

the absence of contemporaneous medical records does not preclude a finding of

disability:

> While [SSR 83-20] clearly emphasizes the importance of
> objective medical evidence, it acknowledges that in some
> cases, the claimant's impairment may have become
> disabling prior to the date it was first diagnosed . . . .
> Therefore, although objective medical evidence is
> necessary to establish the existence of a disabling
> impairment, if a claimant has already been found to
> suffer from a disabling impairment, objective medical
> evidence, while preferred, is not essential to resolving
> the onset date of that disability.

*Houston*, 2011 WL 6152992, at *12 (quoting *Plumley*, 2010 WL 520271, at *7

(internal citation omitted)); *see also Moriarty v. Astrue*, 2008 WL 4104139, at *6

(D.N.H. Aug. 28, 2008) ("Nowhere in [SSR 83-20] is there any suggestion that the

absence of medical records establishing an onset date is fatal to an individual's

disability claim.  In fact, the SSR provides just the opposite, specifically noting

that in some cases it may be necessary to infer the onset date of a claimant's

disability from non-medical evidence.").

Thus, under *Houston*, because plaintiff has already been found disabled and

entitled to SSI benefits as of November 2006, SSR 83-20 "requires the ALJ to

24

determine the onset date of disability." *Houston*, 2011 WL 6152992, at *11. The ALJ has not done so here. At issue in this case is whether plaintiff became disabled before he reached age 22 on November 27, 1989, due to his learning disorder, depressive disorder, adjustment disorder, impaired vision, and obesity. The undersigned notes that the only evidence dating before November 1989 are plaintiff's educational school records from the 1975 to 1982 time period. (Tr. 117-26, 240-42). Plaintiff's parents are deceased and there are no statements or testimony from plaintiff's family members or friends submitted to the ALJ about plaintiff's life, his interactions with and ability to relate to family, friends, teachers and classmates, or his activities of daily living before his 22nd birthday.[4] Further, there are no contemporaneous medical records from the time frame at issue here, namely, before plaintiff turned 22 years old. Plaintiff's only medical records in the administrative record are those from The Guidance Center for the September 2006 through July 2007 time period. (Tr. 174-203, 243-57). A Psychiatric Review Technique Form ("PRTF") dated January 24, 2007, expressly only assessed plaintiff for the November 1, 2006 through January 24, 2007 time period.

---

[4]The undersigned notes that a statement from plaintiff's uncle was submitted by plaintiff's representative to the Appeals Council (Tr. 170-73), but as explained *supra*, exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See supra* n.2.

(Tr. 207-20).[5]  The State Agency reviewing psychiatrist, Thomas T. L. Tsai, M.D., who was charged with preparing the PRTF assessing plaintiff for the period from 11/28/1985 to July 30, 2009, stated that he had insufficient evidence to make a medical determination.  (Tr. 226-39).  Dr. Tsai noted "[t]his is a CDEF claim thus disability must be proved prior to age 22," and that plaintiff "has a previous voc allowance dated 1/24/2007."  (Tr. 238).  Dr. Tsai recognized that the school records have IQ scores from 1975-76 "but [the records] are not of the WAIS testing,"[6] and stated that he "would need more information before adjudication." (Tr. 238).  He therefore did not assess plaintiff's functional limitations, including the degree of limitation, for the 1985 through 2009 time period.  (Tr. 236). Presumably then, the ALJ similarly would need more information to adjudicate plaintiff's application for adult child disability benefits and to determine the onset date of plaintiff's disability.  The ALJ, however, did not comply with SSR 83-20. He did not determine plaintiff's disability onset date and did not obtain additional information to make that determination, but instead, based on the above described records, the ALJ concluded that plaintiff was not disabled prior to age 22.

Although plaintiff bears the burden of establishing that he is entitled to

---

[5]This PRTF was presumably prepared for plaintiff's November 2006 application for SSI benefits, for which he was awarded benefits.

[6]WAIS stands for the Wechsler Adult Intelligence Scale, a test designed to measure intelligence in adults and older adolescents.

disability benefits, courts have recognized that social security proceedings are "inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). As a result, an ALJ has an affirmative duty to develop the factual record upon which his decision rests, regardless of whether the claimant is represented by legal counsel at the administrative hearing. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). However, where the claimant is without counsel, incapable of presenting an effective case, and unfamiliar with hearing procedures, the ALJ has a "special, heightened duty" to develop the administrative record and ensure a fair hearing. *See Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. 2008) (citing *Lashley*, 708 F.2d at 1051-52). To satisfy this duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Lashley*, 708 F.2d at 1052 (internal citations omitted). This is especially true where, as here, the unrepresented claimant suffers from a mental impairment. *See Burrows v. Comm'r of Soc. Sec.*, 2012 WL 5411113, at *9 (E.D. Mich. Sept. 28, 2012) (citing *Morlando v. Astrue*, 2011 WL 4396785, at *4 (D. Conn. Sept. 20, 2011) ("In addition to the special solicitude required for *pro se* claimants, the Second Circuit has also emphasized the extra care necessary 'when adjudicating the claims of a litigant whose mental capacity is in question.'")

(internal citations omitted)), *adopted by* 2012 WL 5413174 (E.D. Mich. Nov. 6, 2012).

Whether an ALJ satisfied his "special, heightened duty" to develop the record is determined on a case-by-case basis. *See Osburn v. Apfel*, 1999 WL 503528, at *7 (6th Cir. July 9, 1999) (internal citation omitted). Failure by an ALJ to fully develop the factual record in a particular matter is often evidenced by superficial or perfunctory questioning, as well as a failure to obtain all available medical records and documentation. *See Lashley*, 708 F.2d at 1052. The undersigned suggests that the ALJ here did not fulfill his duty to adequately and fully develop the record regarding plaintiff's disability onset date and plaintiff's mental and physical impairments during the relevant time period (i.e., before age 22). Here, the only record evidence pertaining to the relevant time period is plaintiff's educational school records. (Tr. 117-26, 240-42). The administrative record does not contain any medical records during the relevant time period, or indicate whether such records exist or even were sought. Nor does the record contain any evidence or testimony from any person, other than plaintiff, about plaintiff and his activities and abilities during the relevant time period before November 27, 1989. The only medical consultant retained to opine as to plaintiff's disability status during the relevant time period expressly did not make a finding and instead stated that he had insufficient evidence to make that

28

determination. (Tr. 226-39).  However, the ALJ seemingly ignored that statement and instead stated that he relied on plaintiff's testimony at the hearing, the educational school records,  and the 2006 and 2007 treatment records from The Guidance Center to determine that plaintiff's "limitations will not interfere with his ability to function independently, appropriately, effectively, and on a sustained basis."  (Tr. 31-33).  Plaintiff testified as to very limited activities and abilities but the ALJ found that plaintiff's hearing testimony and allegations were "not well supported by the objective [2006 and 2007] medical findings in the record" and thus he chose not to give that testimony significant weight.  (Tr. 33).  Accordingly, the ALJ primarily relied on the 2006 and 2007 treatment records, and the 2007 report of the state agency medical consultant, to determine plaintiff's disability status.  However, those records reflect plaintiff's current assessments and diagnoses for the 2006-2007 time period, and do not address the relevant time period over 17 years earlier, prior to plaintiff turning age 22, and thus do not address plaintiff's potential impairments on or before November 27, 1989, or address the onset date of plaintiff's disability.  There is no evidence in the record of sudden trauma or worsening of plaintiff's symptoms after age 22, and thus plaintiff's intellectual functioning as of November 2006 (when he was found to be disabled) could have existed prior to age 22.  The undersigned finds that the ALJ simply failed to determine the onset date for plaintiff's disability and failed to

fully develop the record regarding the relevant time period, such as seeking to obtain medical evidence and statements or testimony from friends or family members familiar with plaintiff prior to age 22, particularly given plaintiff's recognized mental impairments and *pro se* status.[7]

A remand pursuant to sentence four is appropriate when "insufficient evidence exists in the record to support the Commissioner's conclusions and further fact-finding is necessary." *Culbertson v. Barnhart*, 214 F. Supp.2d 788, 795 (N.D. Ohio 2002) (citing generally *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994)). In view of the undersigned's finding here that the ALJ failed to fully and fairly develop the record on which his decision was based, it necessarily follows that the ALJ's decision is not supported by substantial evidence. *See Burrows*, 2012 WL 5411113, at *12 (citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) ("when an ALJ fails to develop the record, he does not have sufficient facts to make a decision and, thus, his decision is not supported by substantial evidence")); *Houston*, 2011 WL 6152992, at *12 (remanding the case so that the ALJ can comply with the onset-date-determination procedure set forth in SSR 83-20); *see also Timmons v. Colvin*, 2013 WL

---

[7]Plaintiff also claims the ALJ erred in finding that he is disabled based on mental retardation. The ALJ did not address Listing 12.05(C)–Mental Retardation, in his decision. The undersigned agrees with the Commissioner that, based on the record as it now stands, plaintiff fails to satisfy the elements of Listing 12.05(C) because he cannot establish mental retardation prior to age 22. However, because this matter is being remanded for development of the record and a determination of plaintiff's disability onset date, this issue can be addressed on remand.

3480704, at *12 (S.D. Tex. July 10, 2013) ("Because the ALJ failed to develop the record [concerning plaintiff's onset date and whether he was disabled prior to turning 22 on November 18, 1988], the matter must be remanded to the Commissioner for consideration of [plaintiff's] application for child disability benefits[.]") *Fait v. Astrue*, 2012 WL 2449939, at *6 (E.D.N.Y. June 27, 2012) ("[T]o the extent that the record was insufficient for the ALJ to adequately assess a basis for granting or denying [disabled adult child's] benefits [because the record was devoid of evidence prior to age 22], the ALJ had an 'affirmative duty to investigate facts and develop the record.'") (citing *Pogozelski v. Barnhart*, 2004 WL 1146059, at *10 (E.D.N.Y. May 19, 2004)).  The undersigned therefore concludes that this matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** to the Commissioner for further proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 10, 2014            s/Michael Hluchaniuk
                                   Michael Hluchaniuk
                                   United States Magistrate Judge

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on February 10, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Meghan O'Callaghan, Vanessa Miree Mays and the Commissioner of Social Security</u>, and I certify that I have either hand delivered/ mailed by United States Postal Service the paper to the following non-ECF participant(s): <u>George C. Williams, 31716 Hazel Street, Rockwood, MI 48173, and Mary G. Salmon, P.O. Box 159, Belleville, MI 48112</u>.

                                   s/Tammy Hallwood
                                   Case Manager
                                   (810) 341-7887
                                   tammy_hallwood@mied.uscourts.gov

33